IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GEORGE SIXKILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-54-TCK-TLW |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Plaintiff, George Sixkiller ("Claimant"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act ("SSA"). [Dkt. # 2]. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 11]. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

### Claimant's Background

Claimant was born on March 22, 1960, and was 47 years old at the time of the ALJ's decision. [R. 53, 12]. He has a high school equivalent education and completed vocational training at the Climate Control Institute in heating, air-conditioning and refrigeration. [R. 64-5]. Claimant has worked in assembly, punch press, drilling, and fabrication of plastic and aluminum (1997 to 2002), and as an auto parts clerk (May 2003 to July 2003). [R. 56]. Claimant initially alleged an inability to work beginning April 1, 2002, but amended his alleged onset date to August 1, 2003.

[R. 15].  He claims his inability to work is due to diabetes, breathing/bronchitis problems, and back

pain.[1]  [R. 59].

## Procedure History

On August 2, 2005, Claimant protectively filed for disability benefits under Title II (42

U.S.C. § 401 et. seq.), and for Supplemental Security Income benefits under Title XVI (42 U.S.C.

§ 1381 et. seq.).  His application for benefits was denied in its entirety and on reconsideration.  [R.

15].  A hearing before ALJ Lantz McClain was held March 12, 2007, in Tulsa, Oklahoma.  By

decision dated May 17, 2007, the ALJ found that Claimant was not disabled at any time through the

date of the decision.  [R. 23].  On November 30, 2007, the Appeals Council denied Claimant's

request for review.  [R. 4].  Thus, the decision of the ALJ represents the Commissioner's final

decision for purposes of further appeal.  20 C.F.R. § 416.1481.

## Social Security Law and Standard of Review

Disability under the SSA is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. §

423(d)(1)(A).  A claimant is disabled under the SSA only if his "physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423 (d)(2)(A).  Social Security regulations

implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 416.920.[2]

---

[1] Claimant later included a claim of disability caused by problems with his right arm.  [R.18].

[2] Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §405(g). This Court's review is restricted to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1164 (10th Cir. 1997). The term substantial evidence has been interpreted by the Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs, 933 F.2d 799, 800 (Cir. 1991). Nevertheless, the Court must review the record as a whole, and "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

---

do basic work activities. See id. § 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt, App.1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant -- taking into account his age, education, work experience, and RFC -- can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Decision of the Administrative Law Judge**

The ALJ found that Claimant has the following severe impairments:  degenerative disc disease, disc protrusion at L4-5 and L5-S1; and obesity.  He rejected Claimant's alleged disability, in part, due to trouble breathing/bronchitis, diabetes, gout, and use of his right arm.  The ALJ made his decision at the fourth and fifth step of the sequential evaluation process.  He found from consideration of the evidence of record, that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Claimant's testimony concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.  [R. 20]. He found that Claimant had the RFC to perform light and sedentary work, reduced by the following restrictions:  to occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for at least 2 hours in an 8-hour workday (with normal breaks); and sit for at least 6 hours in an 8-hour workday (with normal breaks).  [R. 19].  The ALJ determined that Claimant could not perform his past relevant work [R. 21], but there were other jobs existing in significant numbers in the national and regional economies that he could perform, based on his age, education, and work experience.  [R. 22].  The ALJ concluded that Claimant was not disabled under the SSA from August 1, 2003, through the date of the decision.  [R. 22].

**Review**

Claimant asserts as error that:  (1) his breathing/bronchitis problems are severe and disabling, constituting error by the ALJ at step two [Dkt. # 18 at 4]; (2) all his physical and mental limitations, in combination with each other, were not properly evaluated by the ALJ in determining his pain and RFC, resulting in error at steps four and five [Dkt. #18 at 6]; (3) the ALJ's decision is not supported by substantial evidence, instead, he improperly interjected his own medical opinion rather than

applying objective medical evidence [Dkt. # 18 at 6], failed to conduct a proper credibility analysis

[Dkt. # 18 at 7], failed to pose a sufficient hypothetical to the vocational expert to include all of

Claimant's impairments [Dkt. # 18 at 8]; and (4) the decision is contrary to law.  [Dkt. # 18 at 9].

**Breathing/Bronchitis Problem**

Claimant asserts that the ALJ erred at step two of his evaluation by failing to recognize that

his breathing/bronchitis problems are severe.  Specifically that the ALJ failed to consider his

persistent complaints of breathing problems documented in the record by:  (1) a letter prepared by

Dr. Kent Farish a neurosurgeon dated September 2, 1999, showing a past history of persistent lung

problems subsequent to pneumonia [R. 100]; (2) an examination report dated September 23, 2005

by Dr. Steven Lee, an internist for the State of Oklahoma Disability Determination Division,

indicating complaints of shortness of breath with exertion [R. 135]; (3) a prescription for an

Azmacort inhaler dated August 29, 2002, [R. 196]; (4) a diagnosis of acute bronchitis and acute

sinusitis on March 13, 2003 [R. 197]; (5) a diagnosis of acute bronchitis and acute laryngitis on

January 10, 2003 (R. 202); (5) a prescription for a Vanceril inhaler dated September 26, 2001 with

a diagnosis of "obstructed air way disease" [R. 226]; (6) examination report dated February 15, 1996

showing complaints of "problems with breathing from time to time" and "sore throat" [R. 241]; (7)

examination report dated January 29, 2001 showing complaints of asthma [R. 243]; and (8) his

March 12, 2007 testimony, particularly that his breathing and back problems limit him to walking

only a quarter of a block each day.  [R. 282-283].

In response, the Commissioner contends that the medical evidence referenced by Claimant

involved treatment for breathing problems and asthma occurring prior to August 1, 2003, which is

the alleged onset date of Claimant's inability to work due to disabling breathing problems and/or

bronchitis.  Moreover, a medical examination conducted on May 19, 2003, only four (4) months prior to his alleged onset date, indicated that Claimant's lungs were clear.  [Dkt. # 19 at 2].  In essence, the Commissioner argues that Claimant's past medical history of "obstructed air way" does not establish a chronic or disabling condition.

After careful review of the entire record, the Court finds the record contains substantial evidence to support the ALJ's decision that Claimant's breathing problem and/or bronchitis is mild, and his breathing problem has only a minimal affect on his ability to perform work-related activities, and thus is not a severe impairment.

The record shows that Claimant obtained treatment for various medical conditions from two physicians associated with the Indian Health Care Clinic.  [R. 62, 97].  The doctors at the Indian Heath Care Clinic are Claimant's treating physicians.  The record also shows medical records from Dr. Kent Farrih with the Warren Clinic, and Dr. James Rogers with Tulsa Neurosurgery Specialists.  [R. 62-63].

In contending that the evidence relied on by the ALJ is not substantial, Claimant first directs the Court's attention to his medical records obtained from the medical clinics.  Specifically, the treatment on February 14, 1996, showing he complained that he had "problems breathing from time to time."  The record reflects a diagnosis of an "URI" (upper respiratory infection) and "allergies," with the notation that Claimant worked around "dust" in a "cold warehouse." On that date, claimant was prescribed Terfendine (an antihistamine) and Guaifenesin (an expectorant for colds and flu).  [R. 241].  More than three years later, on August 9, 1999, Claimant was referred to Dr. James Rodgers, a neurosurgeon, for evaluation of back pain.  Dr. Rodgers' letter addressed the issue of back pain, recommending that Claimant obtain an MRI scan.  The letter merely noted that Claimant

had a "past medical history" of "persistent lung problems subsequent to pneumonia" but made no medical determination of that condition.  [R. 100].

Claimant next relies on a January 29, 2001, medical appointment with Dr. Robert Lawson for back pain and asthma.  Dr. Lawson noted that Claimant was "feeling better" with "no recent respiratory problems."  Under the heading "Purpose of Visit" Dr. Lawson listed DM2, COPD, morbid obesity and deg. disc disease.  However under the heading "Medication/Treatment/ Procedures/Patient Education", Dr. Lawson recommended weight loss, aerobic exercise up to 20 minutes daily, ride stationary bicycle, and see dietician.  [R. 243].  On February 27, 2001, Dr. Lawson prescribed a Vanceril inhaler, with instructions to "inhale 2 puffs, two times a day." Claimant did not fill the prescription until June 28, 2001 and  refilled the prescription on September 26, 2001.  [R. 226].  On August 29, 2002, Claimant filled a prescription for a Azacort inhaler with instructions to inhale "2 puffs two (2) times a day."  [R. 196].

Claimant next directs the Court's attention to a medical appointment two years later, on January 10, 2003.  At this visit, Claimant complained of a sore throat, productive cough and fever for two weeks.  He was diagnosis with "acute bronchitis" and "acute laryngitis" and was prescribed a Z-Pak (antibiotic), Zephrex (a decongestant) and Robitussin (a cough syrup).  [R.202].  Two months later, Claimant returned to the medical clinic with complaints of a cold, congested chest, clogged ears, allergies and swollen eyes.  He was again diagnosed as having "acute bronchitis" and "acute sinuosities" with notation for him to take the same medication prescribed on January 10, 2003. [ R. 197]. On March 25, 2003, Claimant refilled his prescription for a Azmacort inhaler. [R. 196].

In finding that Claimant's breathing problem and/or bronchitis was "mild", the ALJ entered specific findings, as follows:

> The claimant has alleged trouble breathing due to having pneumonia in the past. The claimant had pneumonia in 1996 (Exhibit 6F, page 106). He was placed on inhalers for frequent bouts of bronchitis immediately after having pneumonia. There is no evidence that he has been treated for breathing problems since January 29, 2001; with the exception of two occasions on January 10, 2003, and March 13, 2003, when he was treated for sinusitis and bronchitis (Exhibit 6F, pages 45, 50 and 91). On August 13, 2004, it was noted that the claimant had a "history" of asthma, but he was not treated for it (Exhibit 6F, page 28). On September 23, 2005, the claimant stated that he did not receive any treatment for shortness of breath. Physical examination on September 23, 2005, showed clear lung fields and normal breath sounds with no prolonged expiratory phase or wheezing (Exhibit 3F). Based on the totality of the evidence, the Administrative Law Judge finds that the claimant's breathing problem and/or bronchitis is mild, and would have only a minimal affect on the claimant's ability to perform work-related activities and thus is not a severe impairment.

[R. 18]. The evidence relied on by Claimant in his opening brief does not dispel the ALJ's specific finding that Claimant's breathing problem is mild. Some of the referenced visits to the medical clinic were for treatment of a common cold, flu and allergy with recommended medication to treat the typical symptoms of a cold, flu or allergy (cough, chest congestion, fever, clogged ears and swollen eyes). There is also indication that Claimant's allergies may have been related to the environment associated with his past relevant work (cold warehouse and dust). On the visits specifically relating to breathing problems, the medical records classify Claimant's condition as "acute" which is not inconsistent with the ALJ's finding claimant's breathing problem as mild.[3] The ALJ correctly found that after 1996, Claimant was treated only three times at the medical clinic for his difficulty breathing. Claimant points to periodic prescriptions for an inhaler, but fails to show any medical evidence of

---

[3] Acute is defined as "having a short and relatively severe course." Dorland's Illustrated Medical Dictionary 23 (28th ed. 1994).

regular and systematic use of an inhaler, or any inability of the inhaler to control his condition. Furthermore, the record supports the Commissioner's observation that Claimant's lungs were "clear" prior to the onset of the relevant adjudicated period, August 1, 2003, based on a medical examination conduct on May 19, 2003, [R. 190] and the ALJ's finding that his lungs were "clear" during the relevant adjudicated period, upon medical examination conducted on September 23, 2005. [R.135].

As further evidence that his breathing problem is severe, Claimant refers the Court to his history of complaints in his medical records and his testimony at the administrative hearing regarding his breathing problems. [Dkt. # 18 at 6]. Claimant argues that in discounting this evidence, the ALJ apparently relied on his "own medical opinion," rather than "compelling evidence in the record." [Dkt. 18 at 6]. As previously discussed, the ALJ entered specific findings. He did not rely on his own opinion. For these reasons, the Court finds that the ALJ's findings on this point are supported by substantial evidence.

**Residual Functional Capacity**

Claimant also contends that the ALJ erred at step four by failing to formulate a RFC assessment that included all of Claimant's physical and mental limitations.[4] [Dkt. # 18 at 6]. The Court finds no support for Claimant's allegation on this point. The ALJ entered specific findings as to each of Claimant's allegations of physical limitation, including his trouble breathing [R. 17, 20], diabetes [R.18], trouble with his right arm [R. 18], obesity [R. 18], back pain [R. 20], and medications [R. 20]. The ALJ determined that Claimant's medically determinable impairments could reasonably

---

[4] Claimant's statement in this regard is merely conclusory. The record is devoid of any allegation by Claimant of "mental limitations" in his quest for social security disability benefits. Nor is there evidence in his medical records that Claimant sought treatment for mental distress or anxiety. Accordingly the Court will not address this contention.

9

be expected to produce the alleged symptoms, but that the Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  [R. 20].

Claimant contends that the ALJ's assessment of the severity of his physical limitations is not supported by substantial evidence.  First, Claimant argues that the ALJ's determination is not supported by objective medical evidence.  Specifically, Claimant again relies on the September 23, 2005 consultative examination by Dr. Steven Lee, which mentioned decreased flexion in Claimant's back and history of back pain; and a November 7, 2005 Physical Residual Functional Assessment by Dr. Lise Mungul, which noted degenerative changes in the lumbar spine at L4-5 and L5-SI.  [Dkt. # 18 at 7].

In reference to the September 23, 2005 consultative examination relied upon by claimant, although Dr. Lee noted that the flexion of Claimant's back was limited to 70 degrees (based on a maximum range of 90 degrees) his report also indicates that Claimant "appeared comfortable and in no acute distress." [R. 135].  His record further noted that his musculoskeletal examination revealed "no tenderness over spinous process, sacrum, sacroiliac joint, or costovertebral angles," and that the "[e]xtension and lateral bending of Claimant's back were normal." [R. 136].  Further, Dr. Mungul's November 7, 2005, assessment merely incorporated the results of Claimant's MRI of September 1999, which showed degenerative changes to Claimant's lumbar spine L4-5 and L5-S1.  [R. 143]. However, Dr. Mungul opined that even in consideration of these physical limitations, Claimant should be capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing and/or walking about 6 hours, sitting about 6 hours and pushing and/or was unlimited in his ability to push or pull hand or foot controls.  [R. 142].  Thus, Dr. Mungul opined that Claimant had the physical capacity to perform at a greater level than determined by the ALJ.

The ALJ did address the September 23, 2005 examination by Dr. Lee.  In his findings, the ALJ

noted that Dr. Lee found "no tenderness in the spine or toe, extension and lateral bending of the back

were normal, there were no sensory deficits, and straight leg raising was negative." [R. 21].  The ALJ

also considered Claimant's back problems and determined them as "severe" based on medical records

indicating he suffered from "degenerative disc disease and small disc protrusions at L4-5 and L5-S1."

However, the ALJ also determined that Claimant's physical limitation is not disabling.  [R. 17].  It

is clear that the ALJ considered and took into account the relevant portions of Dr. Lee's examination

and Claimant's past medical records in his evaluation of the record and in his RFC assessment.  As

such, the RFC assessment is supported by substantial evidence.  See e.g. Bridges v. Barnhart, 162

Fed. Appx. 828, 831 (10th Cir. 2006) (unpublished).[5]

**Credibility Assessment**

Claimant also challenges the ALJ's assessment of his credibility, arguing it does not meet the

standard set forth in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  In particular, Claimant argues

the ALJ failed to consider the disabling effect of Claimant's back pain which he claims is

substantiated through:  his medical records, his inability to sit at all times during the administrative

hearing, his daily medication for back pain, and his testimony including his statement that on his

worst days of pain he was compelled to "lay prone on the floor and sometimes crawls to the

restroom." [Dkt. # 18 at 7-8].

The ALJ acknowledged that Claimant's physical limitations could reasonably produce

symptoms, but he found a lack of credibility in Claimant's statement concerning the intensity,

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value.
See  Fed. R. App. 32.1: 10th Cir. R. 32.1.

persistence and limiting effects of these symptoms. [R. 20]. Again, contrary to Claimant's assertions,

the ALJ entered specific findings in his assessment of Claimant's credibility accompanied with direct

citation to the record. [R. 20-21].[6] An ALJ's credibility determination is generally accepted when he

directly links his credibility assessment to substantial evidence in the record. See e.g. Jones v. Astrue,

No. 08-6158, 2009 WL 279870 (10th Cir. Feb. 6, 2009).

The ALJ observed that the medical records prepared by Claimant's treating physicians showed

no limitation on Claimant's ability to perform sedentary work. [R. 21]. Rather, his treating physicians

repeatedly recommended that Claimant stay active, exercise regularly, control weight and consult with

a dietician. The Tenth Circuit has held that it is difficult for a claimant to establish disabling pain

without the explicit confirmation of his treating physician; and in challenging a credibility assessment

the claimant's "medical records must be consistent with the nonmedical testimony as to the severity

of pain." Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990). Thus, the Court finds that ALJ's

assessment of Claimant's credibility is supported by substantial evidence.

**Vocational Expert**

Claimant also contends that the hypothetical question posed by the ALJ to the vocational expert

was insufficient because it failed to address whether Claimant could perform any work in the national

economy given Claimant's specific physical limitations and therefore the expert's testimony failed to

corroborate the ALJ's decision. [Dkt. # 18 at 8-9].

The record shows that the ALJ relied on the vocational expert's opinion that Claimant could

---

[6] In assessing Claimant's credibility the ALJ noted, inter alia, that: (1) Claimant has complained of back pain since 1997, however he continued working until 2003 with no evidence that his condition had worsened [R. 21], (2) his treating physician has not placed any restrictions on Claimant's ability to work [R. 21], Claimant's daily activity restrictions are self-imposed, and Claimant's treating physicians encouraged him to stay active and walk [R. 21].

not perform his past relevant work.[7]  [R. 21].  By application of the regulations, the ALJ classified

Claimant as a "younger individual" [R. 22]; with at least a high school education, with the ability to

speak English.  [R. 22].  The ALJ further determined that an assessment of transferability of job skills

was not material to the determination of disability because applying the Medical-Vocational Rules

directly supports a finding of "not disabled" regardless of whether Claimant's has transferable job

skills.  [R. 22].  The ALJ found that Claimant's RFC capacity was "reasonable" and that he could

function within a full range of light to sedentary work, without experiencing "significant exacerbation

of his symptoms." [R. 21].  "Sedentary work would allow claimant to remain seated most of the day,

which would take pressure off his back."  [R. 21].  The ALJ ultimately determined that based on

Claimant's functional capacity for "the full range of sedentary work" and in consideration of his age,

education, work experience, a finding of "not disabled" was directed by Medical-Vocational Rules

201.28 and 201.29.[8]  The ALJ took Administrative notice that a significant number of sedentary jobs

exists in the region in which Claimant resides.  [R. 22].[9]

The Court finds that because the ALJ clearly identified in the record both medical and

nonmedical evidence that he relied on to support his determination that Claimant does not suffer from

disabling pain, the ALJ properly applied the grids in determining that work exists in the national

---

[7] The vocational expert opined that Claimant's past work was classified as unskilled and semi-skilled, with medium to heavy exertion.  [R. 297].

[8] See Medical Vocational Guidelines Pt. 404, Subpt. P. App.2.

[9] The Court notes that the second question posed by the ALJ to the vocational expert is vague, in both its purpose and application to the case.  The ALJ inquired of the expert whether an individual who is unable to complete an eight-hour day, five days a week would be eliminated from all work.  The expert answered in the affirmative.  However, the ALJ's inquiry appears to be irrelevant to the case.  Apparently the ALJ did not address his second inquiry in his determination because he found that Claimant could perform light or sedentary work for the full 8-hours work-day.

economy which Claimant is qualified to perform.  <u>See</u> <u>Gossett v. Bowen</u>, 862 F.2d 802, 806 (Cir. 1988).  The Court finds that the ALJ's determination that Claimant suffered from no nonexertional impairment [that is, back pain] serious enough to limit the range of jobs available to him is supported by substantial evidence.  Thus the ALJ properly relied on the Medical-Vocational guidelines to demonstrate the existence of substantial gainful work in which Claimant could engage. Additional testimony from the vocational expert was not necessary.  <u>Id.</u> at 808.

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The Court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Claimant not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 24th day of February, 2009.

_____

T. Lane Wilson
United States Magistrate Judge